UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANYALE SHARRON TUBBS #292944,

        Plaintiff,                                      Hon. Robert J. Jonker

v.                                                        Case No. 1:22-cv-588

ANNE CUNNINGHAM, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Danyale Tubbs, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility, filed this action pursuant to 42 U.S.C. § 1983 on June 27, 2022. In his amended complaint, Tubbs alleges that Defendants Anne Cunningham, a Registered Dental Hygienist with the MDOC; Beverly Anderson, a former MDOC Dental Assistant; and Dr. Craig Harless, an MDOC contract dentist, violated his rights under the Eighth Amendment through deliberate indifference to his serious dental needs while he was incarcerated at the Earnest C. Brooks Correctional Facility (LRF) from 2019 through 2021.

Presently before me are Defendant Harless's Motion for Summary Judgment (ECF No. 83) and Defendants Cunningham and Anderson's Motion for Summary Judgment. (ECF No. 84.) The motions are fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that both motions be **GRANTED**.

**I.   Background**

During the period of time relevant to Tubbs's claims, Defendant Cunningham was employed by the MDOC as a dental hygienist at LRF. (ECF No. 85-4 at PageID.814.) In that

position, Cuningham's duties included, among other things, completing dental hygiene (cleaning) appointments, educating patients on oral hygiene, assisting dentists with procedures, triaging dental kites, scheduling appointments, and maintaining dental records and patient files. Cunningham was not permitted to diagnose dental conditions or to treat or recommend treatment for dental conditions. For example, she was not permitted to extract teeth or administer fillings. (*Id.*) During this same period of time, Anderson, who has since retired from the MDOC, was employed as a dental assistant at LRF. Her duties included, among other things, providing dentists chair-side assistance, sterilizing instruments, entering treatment data, maintaining patient records, answering the telephone, scheduling appointments, triaging dental kites, and ordering dental supplies. (ECF No. 85-5 at PageID.819.) Like Defendant Cunningham, Defendant Anderson was not permitted or authorized to diagnose or treat dental conditions or recommend treatment to patients. (*Id.*) Defendant Harless is a board-certified dentist who contracts with the MDOC to provide professional services. (ECF at PageID.650.) Defendant Harless did not examine or treat Tubbs prior to June 8, 2021. (*Id.* at PageID.651.) MDOC dentists such as Defendant Harless do not schedule follow-up appointments for prisoners. Instead, that function is performed by dental hygienists or dental assistants. (*Id.*)

The crux of Tubbs's complaint is that Defendants "individually and collectively" delayed treating his tooth and were deliberately indifferent to his tooth pain and complications, causing the tooth to rot beyond repair and necessitating its removal. (ECF No. 25 at PageID.101.) Tubbs's allegations begin on January 10, 2019, when he sent a healthcare request, or kite, to the dental clinic requesting a full dental exam and a cleaning, as he was experiencing teeth and gum problems. (ECF No. 1-1 at PageID.12; ECF No. 25 at PageID.104.) Although Tubbs alleges that Defendant Harless responded to this kite (*id.* at PageID.104–05), Tubbs's dental records actually show that

dental assistant Kim Hooker was the respondent. (ECF No. 85-2 at PageID.765.) Ms. Hooker notified Tubbs that she had placed him on the dental exam/cleaning list. (*Id.*) Tubbs sent his next kite to the dental clinic about ten months later, on November 14, 2019, complaining of "excruciating pain" in his back tooth. (ECF No. 1-1 at PageID.13; ECF No. 25 at PageID.105.) Tubbs again alleges that Defendant Harless responded to this kite, but Tubbs's dental records show that Ms. Hooker responded to this kite on November 15, 2019, notifying Tubbs that he had been scheduled for an urgent dental examination for teeth ##30 and 31. (ECF No. 85-2 at PageID.764 and 766.) The kite response incorrectly stated that this was Tubbs's first kite at LRF. (*Id.* at PageID.766.) Although Tubbs did not specify a particular tooth, it appears that Ms. Hooker focused on teeth nos. 30 and 31 (lower right molars) because while at his previous facility, he had complained about pain in this area of his mouth but was unable to identify the particular tooth causing the pain. (*Id.* at PageID.763–64.)

Pursuant to Ms. Hooker's response, dentist Magda Litynski examined Tubbs in the dental clinic on November 19, 2019. (*Id.* at PageID.764.) Dr. Litynski reported that Tubbs had pain on his lower left side, a different area than teeth nos. 30 and 31. Her examination found no decay in either tooth 30 or 31. An x-ray of tooth no. 30 showed no pathology. Dr. Litynski recommended that Tubbs use toothpaste for sensitive teeth and determined that no further urgent care was needed. She did not report any findings concerning the source of the lower left side pain. At the appointment, Ms. Hooker corrected Tubbs's record and placed him on the routine dental appointment list as of January 11, 2019—the date the clinic received his first kite—for an exam and cleaning. (*Id.*)

Tubbs next kited the dental clinic over a year later, on December 10, 2020. In his kite, Tubbs stated that he was experiencing "intense pain" in his mouth emanating from a back molar

3

that was splitting and breaking into parts while the other half remained inside his mouth. (ECF No. 1-1 at PageID.14.) Defendant Cunningham responded to this kite on December 11, 2020, explaining that dental call outs were delayed due to COVID-19 and that he would be called out when it was safe to do so. Defendant Cunningham also noted that the dentist had ordered an antibiotic and ibuprofen for Tubbs, and advised him to purchase his own ibuprofen from the store to keep on hand for pain control. (*Id.* at PageID.15.) Tubbs's dental records confirm that Cuningham notified the dentist of Tubbs's condition and that the dentist had ordered an antibiotic and 28 tablets of ibuprofen for Tubbs. (ECCF No. 85-2 at PageID.767.)

On April 5, 2021, Tubbs was called out for a dental appointment but missed it because he was at lunch. (ECF No. 85-3 at PageID.809.) Tubbs sent a kite to the dental clinic that day explaining why he missed the appointment and asking to be rescheduled as soon as possible. (ECF No. 1-1 at PageID.16.) Defendant Cunningham received the kite on April 13, 2021. Although Tubbs had checked the "urgent" box on the kite, after reviewing it, she found no indication of a condition requiring urgent treatment and scheduled him for an appointment with the dentist. (*Id.*; ECF No. 85-4 at PageID.815.)

On June 8, 2021, Tubbs attended a dental appointment with Defendant Harless, which was the first time Defendant Harless encountered Tubbs. (ECF No. 83-3 at PageID.651.) Harless completed a comprehensive dental examination and health history. (*Id.*; ECF No. 85 at PageI.769–74.) Defendant Harless found Tubbs positive for toothache and decayed teeth. He found tooth no. 19 unrestorable and recommended extraction. He also noted "four carious teeth that [were] restorable," and recommended fillings in those teeth (nos. 2, 5, 6, and 15.) (*Id.* at PageID.769–70.) Defendant Harless determined that tooth no. 19 did not require an immediate or urgent extraction because he found no indication that it was abscessed, infected, or causing Tubbs chronic and

4

debilitating pain. (ECF No. 83-3 at PageID.651.) In accordance with the treatment plan, a dental assistant or dental hygienist scheduled an appointment for extraction of tooth no. 19 for November 15, 2021. (*Id.*)

On June 15, 2021, Defendant Cunningham saw Tubbs in the dental clinic for a dental cleaning. Cunningham cleaned Tubbs's teeth, gave him oral instructions on routine dental hygiene, and informed him that he was on the routine dental appointment list for extractions and fillings. During the appointment, Tubbs did not report that he was in pain. (ECF No. 85-2 at PageID.775–76; ECF No. 85-4 at PageID.816.)

On August 15, 2021, Tubbs sent a kite to the dental clinic stating that he was experiencing recurring pain from a broken crown/cracked back molar. (ECF No. 1-1 at PageID.17.) Defendant Anderson responded to the kite on August 17, 2021, informing Tubbs that he was still on the list for an extraction and fillings and would be seen as resources allowed. (*Id.*) Anderson determined that Tubbs likely had an urgent dental need based on his report of aches and pain due to his broken tooth. (ECF No. 85-5 at PageID.819.) Thus, she called Tubbs to the dental clinic and contacted the on-call dentist, who ordered Tubbs an antibiotic, ibuprofen, and acetaminophen. Anderson also confirmed that Tubbs was on the waiting list for an extraction and fillings. (ECF No. 85-2 at PageID.777–78; ECF No. 85-5 at PageID.819–20.)

On October 24, 2021, Tubbs sent another kite to the dental clinic stating that he was currently experiencing recurring pain from the back tooth that was scheduled to be extracted several months prior. (ECF No. 1-1 at PageID.18; ECF No. 25 at PageID.105–06.) Defendant Anderson responded to the kite on October 27, 2021, informing Tubbs that he was scheduled to see the dentist. (ECF No. 1-1 at PageID.18.) Based on Tubbs's kite, Anderson determined that Tubbs was likely experiencing an urgent dental need due to his pain and called him out to the

dental clinic the following day. (ECF No. 85-2 at PageID.779.) She contacted the on-call dentist, Defendant Harless, about Tubbs's condition. (*Id.*; ECF No. 85-5 at PageID.820.) Defendant Harless prescribed Tubbs an antibiotic and acetaminophen. (ECF No. 85-2 at PageID.779; ECF No. 85-5 at PageID.820.)

Defendant Harless saw Tubbs on November 15, 2021, and extracted tooth no. 19 in accordance with the prior dental plan. (ECF No. 83-3 at PageID.652.) The extraction proceeded without complication, and Harless provided Tubbs pain medication. (ECF No. 85-2 at PageID.780–81.) Tubbs did not complain about experiencing pain after Defendant Harless extracted tooth no. 19. (ECF No. 25 at PageID.106–09.)

On May 15, 2022, Tubbs sent a kite to the dental clinic stating that he was still waiting for a dental call out to address the fillings and wanted to be called out "A.S.A.P." (ECF No. 1-1 at PageID.19.) Defendant Anderson responded to the kite the next day confirming that Tubbs was still on the list and would be called out in turn as resources allowed. (*Id.*; ECF No. 85-2 at PageID.783.) Tubbs's May 15, 2022 kite did not indicate an urgent need for treatment. (ECF No. 85-5 at PageID.820.) Tubbs sent another kite to the dental clinic on September 18, 2022, inquiring why he had not been placed on call out for fillings. Tubbs complained that he had been on the waiting list for over a year. Defendant Anderson responded to this kite, noting that he was still on the filling list and would be called out in turn. (ECF No. 85-2 at PageID.784.)

Subsequent to his September 18, 2022 kite, Tubbs was transferred to Saginaw Correctional Facility (SRF). On October 28, 2022, Tubbs had a routine dental appointment with a dentist who examined him and determined that he still needed fillings in teeth nos. 2 and 15 but determined that fillings were not needed in teeth nos. 5 and 6 because there was no decay. (ECF No. 85-2 at

6

PageID.785.) On November 1, 2022, Tubbs returned to the dental clinic at SRF, and the dentist completed the fillings on teeth nos. 2 and 15. (*Id.* at PageID.793–94.)

Several months after he received his fillings, Tubbs was transferred to Lakeland Correctional Facility (LCF). (ECF No. 85-3 at PageID.802.) On April 4, 2023, Tubbs failed to show up for a dental appointment with the dental hygienist at LCF. (ECF No. 85-2 at PageID.795.) He sent a kite to the dental clinic the next day asking to be rescheduled, and he was placed back on the list. (*Id.* at PageID.796.) Tubbs was seen in the dental clinic the following day and had his teeth cleaned and received oral hygiene instructions. (*Id.* at PageID.797.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. Discussion

Tubbs alleges that Defendants violated his Eighth Amendment rights as a result of their deliberate indifference to his serious need for dental care. As noted above, he claims that Defendants' delay in treating tooth no. 19 resulted in the tooth rotting and necessitated its extraction. He asserts that, had Defendants acted sooner, the tooth could have been saved.

7

Defendants contend that they are entitled to summary judgment because there is no genuine issue of fact that they responded reasonably to Tubbs's dental condition and did not disregard his complaints of pain or his need for treatment.[1]

### A. Eighth Amendment Claim

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

---

[1] Defendant Cunningham also contends that Tubbs's amended complaint fails to state a claim against her and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because the amended complaint, which is the operative complaint, supersedes the original complaint. Cunningham notes, correctly, that the amended complaint contains no factual allegation citing any action she took, or failed to take, in violation of the Eighth Amendment. (ECF No. 85 at PageID.730.) Tubbs responds that his motion to amend made clear that his proposed amendment merely added his new allegations and that he continued to rely on his allegations in his original complaint. For example, he notes that the amended complaint referred to paragraphs in the original complaint. (ECF No. 99 at PageID.1044.) "Generally, amended pleadings supersede original pleadings." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014) (citing 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2010)). "If, however, the party submitting the pleading clearly intended the latter pleading to supplement, rather than supersede, the original pleading, some or all of the original pleading can be incorporated in the amended pleading." *Clark v. Johnston*, 413 F. App'x 804, 811–12 (6th Cir. 2011); *see also Anson v. Corrections Corp. of Am.*, No. 4:06 CV 1672, 2007 WL 1467058, at *1 n.2 (N.D. Ohio May 16, 2007) ("Although an amended complaint takes the place of the original pleading, this one is clearly intended to supplement and not replace the original complaint. The court will therefore construe them together, and will refer to them collectively as the amended complaint."). Here, the circumstances suggest that Tubbs intended his amended complaint not to supersede his original complaint, but to supplement it. Even so, as explained herein, Tubbs fails to carry his summary judgment burden.

The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted). When a plaintiff claims that care he received was inadequate, he must demonstrate that his doctor rendered grossly incompetent treatment. *Rhinehart*, 894 F.3d at 737. To meet this standard, the plaintiff must "present expert medical evidence describing what a competent doctor would have done and why the chosen course was not just incompetent but grossly so." *Phillips v. Tangilag*, 14 F.4th 524, 536 (6th Cir. 2021) (citing *Jones v. Muskegon Cnty.*, 625 F.3d 935, 945–46 (6th Cir. 2010)).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be

9

> aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005).

"A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful." *Rhinehart*, 894 F.3d at 738 (citing *Farmer*, 511 U.S. at 844). So long as a doctor does not knowingly expose a prisoner to an excessive risk of serious harm and exercises reasonable medical judgment, the Sixth Circuit will defer to the doctor's judgment. *Id.* "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Moreover, where the plaintiff's claim amounts to disagreement with the medical provider's judgment or approach to medical treatment, the claim against the defendant-provider fails. *See White v. Corr. Med. Servs. Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004).

### 1. Objective Component

In the context of dental care, the Sixth Circuit has observed that "[d]ental needs fall into the category 'of serious medical needs' because '[d]ental care is one of the most important needs of inmates.'" *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (quoting *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008)). However, "not all dental problems constitute serious medical

needs." *McCarthy*, 313 F. App'x at 814. Instead, "'[a] cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

All Defendants contend that Tubbs fails to establish the objective component of his claim. Defendants Cunningham and Anderson argue that the evidence demonstrates that Tubbs was not experiencing a serious medical need between January 2019 and November 2021, when Defendant Harless extracted tooth no. 19. They cite *Murphy v. Joboulian*, No. 1:15-cv-657, 2017 WL 4117893 (W.D. Mich. Mar. 8, 2017), *report and recommendation adopted*, 2017 WL 4099506 (W.D. Mich. Sept. 15, 2017), to demonstrate that Tubbs's dental condition did not constitute a serious medical need. In *Murphy*, the plaintiff lost a filling and had to wait almost a year to obtain treatment. The court found that the plaintiff was not experiencing a serious medical need during this time because he testified that he did not experience severe pain and was able to eat and perform his prison job. *Id.* at *4. The *Murphy* court also cited *Rouse v. Caruso*, No. 2:06-CV-10961, 2014 WL 7877155 (E.D. Mich. Aug. 5, 2014), *report and recommendation adopted*, 2015 WL 632025 (E.D. Mich. Feb. 13, 2015), in which a plaintiff alleged that he had to wait more than a year for a dentist to repair a loose filling. Citing several circuit court opinions, the court observed that courts have found that a delay in providing dental care may implicate a serious medical need where the prisoner alleged that the delay caused other severe symptoms, including headaches, disfigurement, bleeding, severe pain, and weight loss. *Id.* at *11. The court found that the absence of any allegation of severe symptoms resulting from his need for repair of the filling precluded the plaintiff from establishing a serious medical need. *Id.*

11

Based on the evidence in the record, I conclude that Tubbs fails to satisfy the objective component of his claim. While Tubbs experienced pain, and one can certainly be sympathetic to his annoyance at the long period required to schedule him for treatment, his complaints were intermittent and addressed with antibiotics and anti-inflammatory drugs. Tubbs arguably first reported pain regarding tooth no. 19 in his November 14, 2019 kite, although he simply referred to his "back tooth." He was more specific in his appointment with Dr. Litynski on November 19, 2019, stating that he had pain on his lower left side where tooth no. 19 resides. Yet, Dr. Litynski did not report any findings about teeth in this area. More than a year passed after this appointment until Tubbs sent another kite complaining about tooth pain, this time in a back molar, apparently tooth no. 19. After being prescribed an antibiotic and ibuprofen, Tubbs did not complain about pain from tooth no. 19 again until August 15, 2021. In the interim, Defendant Harless examined Tubbs and recommended an extraction but found no need for immediate action as the tooth was not abscessed or infected and was not causing Tubbs chronic and debilitating pain. And, during the dental cleaning by Defendant Cunningham one week later, Tubbs did not report tooth pain. Thus, while the tooth caused Tubbs pain on occasion, nothing indicates that it was debilitating or prevented him from engaging in normal activities, such as eating. *See Murphy*, 2017 WL 4117893, at *4. In fact, Tubbs missed his appointment with the dentist on April 5, 2021 because he was at lunch. His argument that he missed the appointment because he was held up at lunch misses the point. The fact that Tubbs chose to go to lunch at all and chance missing his dental appointment suggests that his pain was not debilitating. Finally, Tubbs fails to demonstrate that his dental condition led to other severe symptoms, as set forth in *Rouse*.

To the extent Tubbs contends that his need for fillings in teeth nos. 2, 5, 6, and 15 constituted a serious medical condition, this assertion also fails. Similar to *Murphy* and *Rouse*,

Tubbs fails to demonstrate that his need for fillings caused pain or other severe symptoms. As noted above, Tubbs eventually received fillings at SRF in teeth nos. 2 and 15, but another dentist at that facility determined that teeth nos. 5 and 6 did not need fillings because there was no decay in those teeth.

Because Tubbs has not shown that he experienced a serious medical condition, he must present evidence "to establish the detrimental effect of the delay in [dental] treatment." *Napier*, 238 F.3d at 742. Although Tubbs contends that the delay in treatment necessitated the extraction of tooth no. 19, he fails to present admissible evidence—as opposed to his unsupported argument—establishing that his tooth could have been saved had it been treated earlier. Similarly, Tubbs fails to present any evidence establishing a detrimental effect of a delay in completing his fillings.

### 2. Subjective Component

Tubbs's claims against all Defendants also fail on the subjective component. As an initial matter, Tubbs may not rely on events that occurred in 2019 to establish deliberate indifference because no Defendant in this action dealt with Tubbs during that time.

#### a. Defendant Cunningham

Cunningham interacted with Tubbs on three occasions. First, on December 11, 2020, she responded to Tubbs's December 10, 2020 complaint of "intense pain" from his back molar by contacting the on-call dentist, who ordered an antibiotic and ibuprofen for Tubbs. She also advised Tubbs that dental call outs were delayed due to COVID-19 but that he would be seen once it was safe to do so. Next, Cunningham responded to Tubbs's April 5, 2021 kite asking to be rescheduled with the dentist because he had missed his appointment that day. Because nothing in the body of the kite indicated a condition requiring urgent treatment, Cunningham rescheduled the

13

appointment with the dentist in the ordinary course, *i.e.*, for a non-urgent matter.² Finally, she cleaned Tubbs's teeth on June 15, 2021, and noted that Tubbs was scheduled for an extraction and fillings. In each of these encounters, Defendant Cunningham reasonably responded to Tubbs's dental needs.

Tubbs asserts that Cunningham was deliberately indifferent for several reasons. First, he argues that her December 11, 2020 response providing him only a limited amount of ibuprofen for four months failed to consider whether he had funds available to purchase ibuprofen from the store during that period. Next, he asserts that, in spite of the COVID-19 delays, Cunningham should have scheduled him to be seen earlier than April 5, 2021. Finally, he asserts that she was deliberately indifferent by not allowing him an immediate make-up appointment. Each argument lacks merit. As to her December 2020 response, Tubbs offers no evidence that Cunningham was aware that he lacked funds to purchase ibuprofen after his initial supply ran out, and he admitted that he was able to purchase ibuprofen on at least one occasion and obtained Tylenol or ibuprofen from other prisoners on other occasions. (ECF No. 85-3 at PageID.808.) As for scheduling, Tubbs offers no evidence that, as a registered dental hygienist, Cunningham was authorized to determine that Tubbs's dental need was more urgent than those of other prisoners and to expedite his appointment on the list before other prisoners. Moreover, Tubbs fails to demonstrate that, in spite of staff shortages or lack of resources in the LRF dental clinic, Cunningham had the ability to assign him an earlier appointment. Last, Cunningham reasonably interpreted Tubbs's request to

---

² In his response, Tubbs refers to a phone call between an unidentified housing unit officer and unidentified dental staff in which the officer allegedly requested that Tubbs be seen that day (April 5) or that he rescheduled for an immediate appointment. (ECF No. 99 at PageID.1052, 1057.) As Defendants correctly note, this assertion relies on inadmissible hearsay.

14

reschedule his missed appointment as a non-urgent matter, as nothing in his kite indicated an urgent dental condition.

The cases Tubbs cites as supporting his claim of deliberate indifference against Cunningham, *Carver v. Knox County*, 753 F. Supp. 1370 (E.D. Tenn. 1989), and *Manney v. Monroe*, 151 F. Supp. 2d 976 (N.D. Ill. 2001), are inapposite. *Carver* involved a class action against a county seeking injunctive relief based on unconstitutional conditions of confinement, rather than a deliberate indifference claim against an individual health care provider. *Manney* is distinguishable because, in that case, the plaintiff presented evidence that the dental hygienist ignored his repeated requests to see a dentist or ensure that he received adequate care from a dentist. 151 F. Supp. 2d at 993–94. There is no such evidence here.

The instant facts are more akin to *Vance v. Prison Health Services*, No. 2:10-cv-217, 2011 WL 4346507 (W.D. Mich. Sept. 15, 2011), in which the court found that the dental assistants were not deliberately indifferent to the plaintiff's dental need because they placed him on call out for evaluation by a dentist when he complained of tooth or jaw pain or when he indicated that he needed dental care. The court further noted that the plaintiff failed to demonstrate that the defendants were responsible for evaluating his dental problems or were the cause of any delay in his treatment. *Id.* at *5; *see also Dykes v. Downs*, No. 2:18-cv-11751, 2019 WL 7821417, at *5 (E.D. Mich. Dec. 20, 2019), *report and recommendation adopted*, 2020 WL 514692 (E.D. Mich. Jan. 31, 2020) (holding that the defendant dental assistant appropriately performed her job duties by responding to the plaintiff's kite, and scheduling an appointment with the dentist, and taking x-rays). The same is true here. Thus, Defendant Cunningham is entitled to summary judgment.

### b. Defendant Anderson

Defendant Anderson responded to Tubbs's kites complaining of pain on two occasions, August 15, 2021, and October 24, 2021. On both occasions, she called Tubbs to the dental clinic and contacted the on-call dentist, who ordered Tubbs appropriate medication. She also confirmed that Tubbs was on the list for an extraction and fillings. Tubbs's argument that Defendant Anderson was deliberately indifferent to his dental need or was responsible for the alleged delay in treatment is unsupported by the record. As in *Vance*, Tubbs fails to show that Anderson was deliberately indifferent to his dental need or was the cause of any delay.

### c. Defendant Harless

Defendant Harless first became involved in Tubbs's dental care on June 8, 2021, when he examined Tubbs and determined that Tubbs needed an extraction and fillings, but circumstances did not warrant an immediate extraction. Harless eventually extracted tooth no. 19 without complication on November 15, 2021. Harless could not have been responsible for any delay in treatment prior to June 8, 2021, nor was he responsible for scheduling the extraction. Moreover, Defendant Harless's determination that the tooth's condition did not warrant an immediate extraction was simply a medical judgment. Tubbs's disagreement with Defendant Harless's professional judgment provides no basis for a deliberate indifference claim. *See White*, 94 F. App'x at 264.

### B. Qualified Immunity

Defendants Cunningham and Anderson also contend that they are entitled to qualified immunity on Tubbs's claims against them. In light of the foregoing recommendations, I find no need to address this argument.

## IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' motions for summary judgment (ECF Nos. 83 and 84) and dismiss this action with prejudice.

I further recommend that an appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

Dated: November 14, 2023      /s/ Sally J. Berens
                              SALLY J. BERENS
                              U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).